JESSE A. RANSOM, ESQ.
RANSOM PLLC
Nevada Bar No. 13565
64 N. Pecos Rd, Suite 1100
Henderson, NV 89074
Telephone: (702) 337-3718
Email: jesse@ransomlegal.com

*Attorney for Plaintiff Newton Dorsett*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NEWTON DORSETT,<br><br>    Plaintiff,<br><br>v.<br><br>BRIAN MOGENSEN; ESA LTD, LLC; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>    Defendants. | Case No.: 2:21-cv-985<br><br>**COMPLAINT** |

Plaintiff Newton Dorsett, by and through counsel, complains and alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction under 28 U.S.C. § 1332 as the matter in controversy is in excess of $75,000 and there is complete diversity of citizenship between Plaintiff and Defendants.

2. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391(b)(2) as a substantial part of the events, transactions, acts, and violations of law occurred within this district.

**PARTIES**

3. Plaintiff Newton "Newt" Dorsett, at all times relevant herein, was and is a resident of Shreveport, Louisiana.

4. Defendant Brian Mogensen, at all times relevant herein, was and is a resident of Cedar Rapids, Nebraska or Johnstown, Ohio.

5. Defendant ESA LTD, is a Nevada limited liability company, established on or about October 19, 2016 (Nevada Business ID NV20161617889, now revoked). Its principal place of business was in Las Vegas, Nevada.

6. The true names and capacities of the Defendants designated herein as DOES I-X and ROE CORPORATIONS I-X, inclusive, are presently unknown to Plaintiff, who, therefore, sues these Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that these Defendants, and each of them, designated as DOES I-X and ROE CORPORATIONS I-X, inclusive, are, or may be, legally responsible for the events referred to in this action, and caused damages to Plaintiff, as herein alleged. Plaintiff will ask leave of this Court to amend the Complaint to insert the true names and capacities of such Defendants when the same have been ascertained, and to join them in this action, together with the proper charges and allegations.

## GENERAL ALLEGATIONS

7. This action arises from a multimillion-dollar fraudulent sports betting investment scheme involving Defendant Brian Mogensen and spearheaded by John Thomas, Thomas Becker, and their companies Einstein Sports Advisory LTD, LLC and ESA LTD, LLC, among other companies and individuals. The scheme involved selling unregistered securities to investors across the country, under the guise of pooling investor funds to place sports bets in Las Vegas casinos. Investors were told that they would be able to make upward of ten times their initial investment within a short period of time and with very little risk, all based on a proprietary sports betting system.

8. Starting on or about August 2014, Thomas Becker ("Becker"), a resident of Henderson, Nevada, and John Thomas ("Thomas" a/k/a, John Rodgers, Johnathan West, John Frank, and John Marshall), also a resident of Henderson, Nevada, began soliciting and securing investments for pooled investor funds that would be used to bet on sporting events. Neither Becker nor Thomas was or is registered with the SEC in any capacity.

9. As part of the fraud, Thomas and Becker established Einstein Sports Advisory, LLC ("Einstein"), a Nevada limited liability company, on or about November 3, 2015 (Nevada Business ID

NV20151658501, now revoked). Its principal place of business was in Henderson, Nevada. Einstein is not registered with the SEC in any capacity. Becker was the Managing Member of Einstein.

10. Thomas and Becker established ESA LTD ("ESA"), a Nevada limited liability company, on or about October 19, 2016 (Nevada Business ID NV20161617889, now revoked). Its principal place of business was in Las Vegas, Nevada. ESA is not registered with the SEC in any capacity. Becker was the Managing Member of ESA.

11. Thomas and Becker recruited a large network of brokers and agents across the United States to find and solicit investors for the scheme.

12. In or about early 2016, Mogensen began working as a broker for Einstein and ESA and solicited and secured investments for the scheme. Mogensen is not registered with the SEC in any capacity, nor is he associated with any registered broker.

13. In addition to Einstein and ESA, Thomas and Becker formed other entities created to advance the fraud, including QSA, LLC, Vegas Basketball Club, LLC, Vegas Football Club, LLC, Wellington Sports Club, LLC, and Welscorp, Inc.

14. Generally, the scheme was same for each broker, agent, and entity. Investors were induced to sign a Sports Advisory Agreement with one of the entities. The Sports Advisory Agreements stated that through use of a "proprietary handicapping system that is highly accurate in predicting the outcome" of sporting events, that the entity would manage the investor's funds by making picks and placing bets with Nevada sportsbooks. Terms varied from each agreement but returns on the investment were guaranteed, some as high as 1000% over a period of only a few months.

15. Becker, Thomas, and their brokers and agents told investors that their funds would be pooled with other investor funds when placing bets and that they would share in the profits generated by the pooled betting. Under the Sports Advisory Agreement, once a fund hit a specific investment return, the entity would give 50% of the target fund back to the investor and keep the remainder for itself.

16. Under the scheme, brokers would collect a percentage of each investment paid after a Sports Advisory Agreement was signed, and a percentage of any commissions would be paid to investors.

17. Investors were given individual accounts and passwords to access an online account that included a spreadsheet that showed the status and history of the investment fund and outcome of betting activity. The online database was updated by Thomas and Becker.

18. However, almost none of the invested funds were used to place bets on sporting events. Thomas and Becker paid front-end and back-end monies to brokers and agents, and then spent the majority of the money on funding a lavish lifestyle and for personal use.  New investments were used to pay brokers and agents and then pay earlier investors who wished to withdraw their investment.

## MOGENSEN SOLICITS PLAINTIFF

19. In or about the fall of 2016, Defendant Mogensen began to solicit Plaintiff to invest in the scheme. Plaintiff was introduced to Mogensen via a business contact. Mogensen informed Plaintiff about the potential investment into Einstein. Mogensen represented that Einstein had a proprietary handicapping system that was incredibly accurate at determining the wining outcome of sporting events.

20. Defendant Mogensen stated that the Plaintiff could earn returns over ten times Plaintiff's initial investment in only a few months by investing in Einstein and allowing them to place sports bets with pooled investment funds.

21. Plaintiff was initially not interested in investing in Einstein and declined.

22. Defendant Mogensen continued to solicit Plaintiff's investment into Einstein throughout 2016 and into 2017.

23. Mogensen sent Plaintiff a copy of a check dated 9/21/2016 for $50,000 payable to Mogensen drafted from Nevada State Bank. Mogensen represented that this was Mogensen's first payment from Einstein after he invested $25,000 in April 2016. Mogensen further represented that

4

Mogensen' remaining investment in Einstein was worth over $100,000, all from his initial $25,000 investment.

24. In our about April 2017, Mogensen sent Plaintiff a copy of a check dated 4/18/2017 for $162,000 from ESA to Mogensen with a printed note that said, "Fwd:FWD:FWD: Attached 162500 check on time 25000 invested may 3 total net income 337500 dollars 10 months 2 weeks net profit 8035 dollars every week april 1 new starting bankroll 100000 april 1 2017 goal 1250000 or more in my pocket all started with 25000 best investment in the world today may 3 let baseball money be made." (copied as drafted).

25. Mogensen provided access to an online spreadsheet and offered a free webinar to explain Einstein's sports betting process. Mogensen represented that the Einstein spreadsheet contained all the historical information on the various bets and success of the investment. Mogensen represented that Einstein had only 6 losing days out of 54 betting days between May 2016 and May 2017.

26. Mogensen represented to Plaintiff that the investment was properly established in Nevada and fully complaint with all relevant laws and regulations.

27. In or about July 2017, relying on Mogensen's representations, including copies of checks from ESA and Mogensen's Sports Advisory Agreements, as well as information on the Einstein spreadsheet, Plaintiff invested in the scheme.

28. On or about July 31, 2017, John Thomas, using the name Jonathan West, emailed Plaintiff (from the email jwest@einsteinsports.net) a populated copy of a Sports Advisory Agreement between Plaintiff and Einstein for an initial investment of $100,000. Mogensen was copied on the email (brianm@einsteinsports.net).

29. The Sports Advisory Agreement stated that the target fund would be $800,000 to be reached within 120 days. Once the target amount was reached, Einstein would pay Plaintiff $400,000, 50% of the target fund.

5

30. On or about July 31, 2017, Plaintiff executed the Sports Advisory Agreement and returned it to Thomas and Mogensen.

31. On or about August 18, 2017, Plaintiff wired $100,023.84 to ESA's account at US Bank in Henderson, Nevada.

32. Thomas and Mogensen used an ESA corporate account to accept funds for Plaintiff's investment into Einstein and did not disclose to Plaintiff that ESA and Einstein were in fact two separate Nevada limited liability companies.

33. At no point was Plaintiff's investment ever invested in Einstein or used for placing sports bets. Mogensen, Becker, and Thomas split Plaintiff's money for their personal use. ESA paid Mogensen an upfront commission from Plaintiff's $100,023.84 investment. The rest of the money went into the ESA account to be used by Thomas and Becker for their personal expenses.

34. Between August 2017 and about July 2019, Plaintiff would periodically login to his Einstein account and view the status of his purported investment. Plaintiff periodically contacted Mogensen via phone or text to discuss the investment.

35. Plaintiff did not withdraw any of his investment from Einstein. Plaintiff relied on the information provided to him via his online Einstein account and the spreadsheet. Plaintiff continued to rely on information and representations from Mogensen that the investment was profitable and that he should continue to roll over the investment and not withdraw any funds. At no point did Mogensen or anyone else inform Plaintiff that he would not be able to withdraw his money or that there were any negative issues impacting the investment.

36. In or about July 2018, based on the information portrayed in Plaintiff's online Einstein account and Mogensen's continued representations in the soundness and profitability of the investment, Plaintiff executed a second Sports Advisory Agreement to roll over all accumulated profits back into the Einstein investment.

37. As early as July 2017, Einstein began having issues making on-time payments to investors wishing to withdraw funds. In or about late 2018 and early 2019, Einstein stopped making

on-time payments to investors of withdrawals from investor accounts. Investors began to complain and seek full payment from Einstein. No payments were made. Investors complained to the Securities and Exchange Commission.

38. In or about May 2019, local news in Nevada reported on Einstein and the potential SEC investigation into the sports betting funds.

39. At no point did Einstein, ESA, Mogensen, or any other entity or individual tell Plaintiff about any potential issues withdrawing money from Plaintiff's investment. Mogensen knew that Einstein and ESA were not investing the money as represented and that the money was not available for withdrawal. Mogensen intentionally did not inform Plaintiff of any financial troubles.

40. In or about July 2019, Plaintiff's total investment into Einstein via his initial payment to ESA was purportedly worth approximately $3.8 million dollars.

41. In or about July 2019, Plaintiff began to have trouble accessing Plaintiff's online Einstein account and online spreadsheet. To this point, Plaintiff was not made aware, nor did Plaintiff have any knowledge of the late payments by Einstein to other investors or any possible investigation into Einstein, Thomas, Becker, or any other of their entities.

42. Plaintiff called Mogensen to inquire about the access issues and discuss the investment. During that phone call Mogensen indicated that there were technical issues affecting access to the online Einstein account and spreadsheet. Mogensen also stated that Plaintiff would not be able to withdraw funds at this time.

43. Plaintiff attempted to contact Mogensen several times to inquire about Plaintiff's investment and to withdraw funds from his account. Plaintiff was never able to access his online Einstein account after this point and never received any payment from Einstein, ESA, Mogensen, or any other related individual or entity.

**SEC COMPLAINT AND RELATED LITIGATION**

44. On or about August 30, 2019, the Securities and Exchange Commission ("SEC") filed a Complaint (Case No. 2:19-cv-01515) against Thomas, Becker, Einstein, five Nevada entities (QSA,

LLC, Vegas Basketball Club, LLC, Vegas Football Club, LLC, Wellington Sports Club, LLC, and Welscorp, Inc), and other brokers involved in the scheme. Defendant ESA LTD, LLC was not named as a defendant in the SEC's Complaint. Default judgments have been entered against Thomas, Becker, Einstein and the five other Nevada entities.

45. Several investors filed an involuntary Chapter 7 bankruptcy proceeding (Case No. 19-18056-abl) against Einstein and three of the Nevada entities, QSA LLC, Wellington Sports Club LLC, and Wellscorp, Inc. ESA LTD, LLC was not named as a debtor in the petition.

## FIRST CAUSE OF ACTION
### FRAUD - FRAUDULENT INDUCEMENT AND INTENTIONAL MISREPRESENTATION

46. Plaintiff repeats, realleges, and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

47. On July 31, 2017, Plaintiff and Einstein entered into a Sports Advisory Agreement, and on August 18, 2017, Plaintiff paid $100,023.84 to ESA.

48. Defendants, Mogensen individually and as an agent of ESA, made the following fraudulent and false representations, both by omission, and by affirmative statements of fact, to Plaintiff in order to induce Plaintiff to enter into the Sports Advisory Agreement and make an investment (each a "Misrepresentation"):

   a. In soliciting Plaintiff's investment in 2017, Mogensen represented that the investment was legal and compliant with all gaming regulations and laws.

   b. Mogensen represented that Plaintiff's investment was to be used for sports betting.

   c. Mogensen represented to Plaintiff that Einstein had a proprietary sports betting investment strategy.

   d. Mogensen represented that Plaintiff's investment would yield returns of over 1000%.

   e. Mogensen represented that Plaintiff would be able to withdraw his investment after 120 days, despite knowing that Einstein was late on payments and that funds were not available for withdrawal.

8

  f. Mogensen knew of the SEC investigation in early 2017 but failed to advise Plaintiff.

49. Defendant Mogensen knew at the time of each representation that Defendant Mogensen's representation was false.

50. Defendants intended to induce Plaintiff to act in reliance upon each misrepresentation so Plaintiff would sign the Sports Advisory Agreement and invest Plaintiff's money in the scheme.

51. To Plaintiff's detriment, Plaintiff justifiably relied on these misrepresentations when he decided to sign the Sports Advisory agreement and invest in the scheme.

52. As a direct, proximate, and foreseeable result of Defendant's acts and/or omissions, Plaintiff has been damaged in an amount in excess of $75,000.

53. As a direct, proximate, and foreseeable result of Defendants' acts, Plaintiff has been damaged in excess of $75,000, and in an amount to be determined at the time of trial.

54. Defendants' acts were committed with fraud, oppression, and/or malice, entitling Plaintiff to punitive damages pursuant to NRS 42.005 in an amount to be determined at trial.

55. As a direct, proximate, and foreseeable result of Defendants' acts, it has become necessary for Plaintiff to secure the services of an attorney, and Plaintiff is entitled to recover attorney's fees and costs incurred herein as damages.

**SECOND CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**

56. Plaintiff repeats, realleges, and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

57. Defendants, Mogensen individually and as an agent of ESA, made the following false representations, both by omission and by affirmative statements of fact, to Plaintiff while attempting to secure Plaintiff's investment in the which Defendants had a pecuniary interest (each a "Misrepresentation"):

  a. In soliciting Plaintiff's investment in 2017, Mogensen represented that the investment was legal and compliant with all gaming regulations and laws.

    b.    Mogensen represented that Plaintiff's investment was to be used for sports betting.

    c.    Mogensen represented to Plaintiff that Einstein had a proprietary sports betting investment strategy.

    d.    Mogensen represented that Plaintiff's investment would yield returns of over 1000%.

    e.    Mogensen represented that Plaintiff would be able to withdraw his investment after 120 days, despite knowing that Einstein was late on payments and that funds were not available for withdrawal.

    f.    Mogensen knew of the SEC investigation in early 2017 but failed to advise Plaintiff.

58.    Defendants knew, should have known, or failed to take reasonable care in verifying or communicating each misrepresentation.

59.    Defendants made each misrepresentation to induce or guide Plaintiff in the business transaction, e.g., sign the Sports Advisory Agreements and invest Plaintiff's money in the scheme.

60.    Plaintiff justifiably relied on these misrepresentations when he decided to sign the Sports Advisory Agreements.

61.    As a direct, proximate, and foreseeable result of Defendants' acts and/or omissions, Plaintiff has been damaged in an amount in excess of $75,000.

62.    As a direct, proximate, and foreseeable result of Defendants' acts, it has become necessary for Plaintiff to secure the services of an attorney, and Plaintiff is entitled to recover attorney's fees and costs incurred herein as damages.

### THIRD CAUSE OF ACTION
### SECURITIES FRAUD – NRS 90.570

63.    Plaintiff repeats, realleges, and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

64.    Pursuant to NRS 90.295, the sale of the investment in the pooled sports betting fund managed by Einstein constitutes a security under the Nevada Securities Act.

65. Defendants sold a security under the Nevada Securities Act without registering the securities in the State of Nevada, in violation of NRS 90.460.

66. Defendant ESA was not licensed to sell such securities in the State of Nevada.

67. Defendant Mogensen was not licensed to sell such securities in the State of Nevada.

68. Pursuant to NRS 90.570, in connection with the offer to sell or sale of a security, a person shall not, directly or indirectly: (1) employ any device scheme or artifice to defraud; (2) make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made not misleading in the light of the circumstances under which they were made; or (3) engage in an act, practice or course of business which operates or would operate as a fraud or deceit upon a person.

69. The Sports Advisory Agreement constitutes an offer to sell a security in the state of Nevada.

70. The security was not exempt from registration under NRS Chapter 90.

71. In connection with the offer and sale of the security, Defendants made untrue statements of material fact or omitted to state material facts necessary to make these statements not misleading in the light of the circumstances under which they were made:

  a. Defendants misrepresented, when soliciting Plaintiff's investment in 2017, that the investment into Einstein was legal and in full compliance with all laws and regulations.

  b. Defendants misrepresented that the investment by Plaintiff would be used to bet on legal and regulated sports games in Nevada Casinos.

  c. Defendants represented to Plaintiff that Einstein had a proprietary sports betting investment strategy.

  d. Defendants represented that Plaintiff's investment would yield returns of over 1000%.

72. The representations made by Defendants were false at the time they were made.

73. Defendants knew the representations were false at the time Defendants made the representations.

11

74. Plaintiff materially relied on Defendants' representations when making his decision to sign the Sports Advisory Agreements and invest in the sports betting scheme.

75. Plaintiff reasonably relied on Defendants' misrepresentations when investing to Plaintiff's detriment. Defendants' misrepresentations constitute an act, practice, or course of business which operated as a fraud on Plaintiff.

76. Defendants engaged in a course of conduct designed to conceal and prevent Plaintiff's discovery of the false and fraudulent representations.

77. Defendants' acts were committed with fraud, oppression, and/or malice, entitling Plaintiff to punitive damages pursuant to NRS 42.005 in an amount to be determined at trial.

78. As a direct, proximate, and foreseeable result of Defendants' acts and/or omissions, Plaintiff has been damaged in an amount in excess of $75,000.

79. As a direct, proximate, and foreseeable result of Defendants' acts, it has become necessary for Plaintiff to secure the services of an attorney, and Plaintiff is entitled to recover attorney's fees and costs incurred herein as damages.

**FOURTH CAUSE OF ACTION**
**CONVERSION - AGAINST ALL DEFENDANTS**

80. Plaintiff repeats, realleges, and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

81. Defendants committed a distinct and intentional act of wrongfully exerting dominion over Plaintiff's property.

82. Defendants' distinct and intentional act was committed in derogation, exclusion, or defiance of Plaintiff's rights, use, and enjoyment, or title in the property.

83. As a direct, proximate, and foreseeable result of Defendants' acts, Plaintiff has been damaged in excess of $75,000, and in an amount to be determined at the time of trial.

84. Defendant's acts were committed with fraud, oppression, and/or malice, entitling Plaintiff to punitive damages pursuant to NRS 42.005 in an amount to be determined at trial.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

- For an award of damages to be determined at trial, in excess of $500,000;
- For an award of special damages in an amount to be determined at trial;
- For an award of punitive damages in an amount to be determined at trial;
- For pre and post judgment interest on all amounts owed;
- For an award of reasonable attorneys' fees, and costs of bringing this action; and,
- For any other legal or equitable relief the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: May 23, 2021

                     /s/ Jesse A. Ransom
                     Jesse A. Ransom, Esq.
                     Nevada Bar No. 13565
                     64 N. Pecos Rd., Ste 1100
                     Las Vegas, Nevada 89074
                     Telephone: (702) 337-3718
                     Email:  jesse@ransomlegal.com

RANSOM PLLC
64 N. PECOS RD, STE 1100
HENDERSON, NEVADA 89074
TEL: (702) 337-3718